ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ORIENTAL BANK<br><br>Parte Recurrida<br><br><br>v.<br><br><br>GLORIA HAYDEE TIRADO MIRANDA H/N/C GLO SPA HEALTH & BE, MARITZA MONTALVO SANTIAGO, FULANO DE TAL POR SI Y EN REP DE LA SLG COMPUESTA POR ESTA Y MARITZA MONTALVO SANTIAGO Y OTROS<br><br>Parte Peticionaria | TA2025CE00635 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2022CV06198<br><br>Sala: 701<br><br>Sobre: Ejecución De Hipoteca: Propiedad Residencial, Cobro De Dinero - Ordinario |

Panel integrado por su presidente, el Juez Salgado Schwarz[1], el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Compareció ante este Tribunal la parte peticionaria, José Méndez & Asociados, José Méndez Latalladi, Maruxa Dumont y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto "los Peticionarios"), mediante recurso de *certiorari* presentado el 17 de octubre de 2025. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 15 de septiembre de 2025, notificada y archivada en autos el 17 de septiembre de 2025. A través del aludido dictamen, el TPI declaró "No Ha Lugar" la "**Moción de Sentencia Sumaria Parcial**" presentada por los Peticionarios.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* ante nuestra consideración, *revocamos* la *Resolución*

---

[1] Mediante la Orden Administrativa OATA-2025-213, emitida el 30 de octubre de 2025, se designó al Hon. Carlos G. Salgado Schwarz en sustitución del Hon. Felipe Rivera Colón.

recurrida y desestimamos, con perjuicio, las causas de acción instadas en contra de los Peticionarios.

**I.**

El caso de epígrafe tuvo su génesis el 5 de diciembre de 2022, con la presentación de una "**Demanda**" por parte de Oriental Bank (en adelante, "Oriental") en contra de la Sra. Gloria Haydee Tirado Miranda (en adelante, la "señora Tirado Miranda" o "Recurrida") h/n/c Glo Spa Health & Beauty. Mediante la misma, expuso que, el 22 de julio de 2022, la señora Tirado Miranda obtuvo un préstamo ascendente a $101,100.00, según consta en el documento titulado pagaré, suscrito bajo el afidávit número 45729 ante el notario público Ernesto A. Meléndez Pérez. Asimismo, sostuvo que, con el propósito de garantizar el cumplimiento de la referida obligación, la señora Tirado Miranda suscribió un pagaré hipotecario por la misma cantidad a favor de Oriental, bajo el afidávit número 45728, otorgado ante el notario antes mencionado. Manifestó que la Recurrida formalizó una escritura de hipoteca por la cantidad indicada sobre determinado bien inmueble, cuya descripción es la siguiente:

> URBANA: Solar número uno (1) del Bloque G Sección cuarta (4ta), Urbanización Santa Juanita del Barrio Minillas de Bayamón, Puerto Rico, compuesta de doscientos veintinueve puntos trescientos ochenta (229.380) metros cuadrados. En lindes por el Noroeste, con Avenida Laurel; por el Sureste, con terrenos propiedad de Bayamón Hills Corporation; por el Nordeste, con una calle que lo separa del Centro Comercial de Santa Juanita y por el Suroeste, con solar numero dos (2).
>
> ------Contiene una casa de concreto armado de dos (2) plantas, con sala, comedor, cocina, tres (3) cuartos dormitorios, un (1) cuarto de baño y que constituye una vivienda independiente. --------------------------------------------------
> ------Existe una servidumbre por signo aparente establecida por la Corporación vendedora en la pared que divide los apartamentos localizados en los solares numero dos (2) y uno (1), cuya pared continuara sirviendo a ambos apartamentos y pertenecerán en común pro-indiviso y en toda su actual extensión y espesor a los propietarios de ambos apartamentos. -------------------------------------------------------------
> -------Existe una servidumbre de acceso de un metro de ancho a todo lo largo de la colindancia Sureste del solar. ---------------
> -------Consta inscrita al folio 209 del tomo 607 de Bayamón Sur, finca 28069, Registro de la Propiedad de Bayamón, Primera Sección.------------------------------------------------------[2]

---

[2] *Véase*, <u>SUMAC-TA</u>, entrada núm.1, anejo 1.

Expresó que, además de lo anterior, la señora Tirado Miranda suscribió un contrato de prenda y gravamen mediante el cual entregó en prenda el referido pagaré hipotecario, junto con los intereses, productos y sumas de dinero que éste y la propiedad que lo garantiza generen. Añadió que la Recurrida también suscribió un acuerdo de garantía mobiliaria, mediante el cual cedió a Oriental la póliza de seguro de vida número T400427930, expedida por Lincoln National Life Insurance. Adujo que la señora Tirado Miranda incumplió con el pago del préstamo, por lo que procedió a acelerar la deuda, al encontrarse vencida, líquida y exigible. Manifestó, además, que las múltiples gestiones de cobro realizadas resultaron infructuosas.

En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" la "**Demanda**", condenando a la señora Tirado Miranda al pago de las siguientes sumas: (1) $101,100.00 por concepto de principal, (2) $3,266.00 en intereses acumulados hasta el 5 de diciembre de 2025, más los que continúen acumulándose hasta el pago total de la deuda, (3) $230.20 por cargos por mora, (4) $5,055.00 por otros cargos y (5) $10,110.00 en concepto de honorarios de abogado pactados.

En respuesta a ello, el 31 de marzo de 2023, la Recurrida presentó su "**Contestación a Demanda**" en la que negó la mayoría de las alegaciones formuladas en su contra y sostuvo que el negocio Glo Spa Health & Beauty cesó operaciones como consecuencia de la negligencia, dolo y mala fe de Oriental. Argumentó que los pagos correspondientes al préstamo estaban condicionados a los ingresos provenientes de la operación de dicho negocio y que la referida actividad económica se vio afectada por la actuación negligente de Oriental al otorgar un préstamo comercial, a pesar de conocer la zonificación del inmueble y las implicaciones que ello conllevaba. Alegó que representantes de Oriental le indicaron, de manera errónea, que bastaría con solicitar un permiso de uso para que el negocio pudiera operar sin inconvenientes.

Ese mismo día, la señora Tirado Miranda presentó una "**Reconvención**", mediante la cual expuso que desde el inicio de los

trámites de compraventa y constitución de hipoteca manifestó que el uso que daría a la propiedad sería estrictamente comercial. Afirmó que tanto Oriental como los demás interventores en la transacción estaban al tanto de que el pago del préstamo se realizaría con las ganancias generadas por la operación de su nuevo negocio. Señaló que fue el 6 de julio de 2022, cuando tuvo conocimiento de la zonificación del inmueble, al recibir por correo electrónico de parte de la representante de Oriental copia de la tasación de la propiedad. Explicó que dicha representante, junto con la corredora de bienes raíces, la Sra. Nicole M. Díaz Toyos (en adelante, la "señora Díaz Toyos"), encargada del proceso de opción a compraventa y representante del vendedor, el Sr. Daniel Vázquez Román (en adelante, el "señor Vázquez Román"), le indicaron que la zonificación no representaba obstáculo alguno para operar su negocio, pues con un trámite sencillo ante el Municipio de Bayamón para la obtención de un permiso de uso comercial podría comenzar operaciones sin dilación.

Argumentó que la orientación ofrecida por Oriental fue errónea, parcializada y contraria a las normas de prudencia y razonabilidad que deben regir la profesión, ya que tanto Oriental, como el señor Vázquez Román y la señora Díaz Toyos sabían que la solicitud de un permiso de uso comercial no equivale a un cambio de zonificación. Afirmó, además, que Oriental no la orientó adecuadamente sobre el propósito de la póliza de seguro de vida, ni si ésta constituía un requisito regulatorio o una condición necesaria para la concesión del préstamo comercial.

Precisó que Oriental, a través de su *Underwriter* y su Comité Evaluador, no detuvo el cierre de la transacción, aun cuando tenía evidencia de que el negocio no era viable para el uso propuesto del inmueble. Resaltó que la referida entidad bancaria tampoco le explicó el proceso necesario para tramitar el cambio de zonificación ni los permisos requeridos para operar comercialmente. Añadió que Oriental otorgó una línea de crédito comercial destinada exclusivamente a actividades de esa naturaleza, incluyendo la compra de una propiedad ubicada en una zona urbana, a sabiendas de las gestiones que debían realizarse antes de la compraventa

y de que los pagos dependían de los ingresos del negocio. Finalmente, sostuvo que Oriental se enriqueció injustamente al conceder un préstamo hipotecario comercial sobre una propiedad zonificada como urbana, actuando de manera temeraria y de mala fe en su perjuicio.

En virtud de lo anterior, le solicitó al Tribunal lo siguiente: (1) el pago de $500,000.00 por concepto de sufrimiento y angustias mentales; (2) $150,000.00 por gastos y mejoras realizados en la propiedad, así como por los costos de cierre del préstamo; (3) $200,000.00 por pérdida de ingresos operacionales del negocio; y (4) una cantidad no menor de $5,000.00 por concepto de gastos adicionales de litigio.

En este contexto, el 3 de abril de 2023, la señora Tirado Miranda presentó una "**Demanda contra Terceros**" en contra de la Sra. Paula Guadalupe Pagán (en adelante, la "señora Pagán"), gerente de sucursal de Oriental; la señora Díaz Toyos h/n/c Zen Real Estate Group PR; el señor Vázquez Román; la U.S. Small Business Administration Puerto Rico & Virgin Islands District Office; los Peticionarios y otros codemandados de nombres desconocidos. En dicho escrito, la Recurrida alegó que el señor Vázquez Román adquirió el bien inmueble objeto de la presente controversia por el precio irrisorio de $53,000.00, y que, en menos de un año, puso la propiedad nuevamente en el mercado para su venta. Señaló que el señor Vázquez Román conocía desde el momento de su adquisición que el inmueble tenía zonificación urbana y que, para establecer un negocio comercial en el lugar, era necesario completar un proceso de cambio de zonificación ante la Junta de Permisos del Municipio de Bayamón y la Oficina de Gerencia de Permisos. Añadió que el señor Vázquez Román estaba consciente de que la propiedad había mantenido uso urbano durante más de cuarenta (40) años, según se desprende de la tasación realizada, y que nunca reveló su profesión, en contravención al Código de Ética Profesional y de Normas de Conducta de la Asociación Nacional de Agentes Inmobiliarios.

Asimismo, sostuvo que la señora Díaz Toyos fue quien preparó y obtuvo las firmas en el contrato de opción de compraventa, documento que, según la señora Tirado Miranda, en ninguna de sus cláusulas establecía

que la propiedad tenía zonificación urbana ni identificaba al vendedor como profesional del sector inmobiliario. Alegó que la señora Díaz Toyos vició su consentimiento al ofrecer una orientación deficiente y omitir información relevante sobre la zonificación del inmueble y la verdadera profesión e identidad del señor Vázquez Román. Indicó también que el tasador utilizó comparables exclusivamente comerciales, concluyendo que el mayor y mejor uso de la propiedad era comercial, pero bajo el supuesto extraordinario de que se otorgara el permiso de uso necesario para la operación propuesta; advirtiendo que, de no cumplirse dicho supuesto, la valoración quedaría sin efecto.

Adujo que la Sra. Maritza Montalvo Santiago (en adelante, la "señora Montalvo Santiago"), suscriptora de préstamos del Banco Oriental, junto con el Comité Evaluador de dicha institución, tenían el deber ineludible de examinar toda la documentación hipotecaria del caso y, en su defecto, paralizar el cierre al constatar que el negocio no era viable para el uso propuesto de la propiedad. Alegó que los representantes de Oriental le aseguraron que el asunto de la zonificación no representaba impedimento alguno para la operación del negocio, pues bastaría con solicitar un permiso de uso comercial ante el Municipio de Bayamón. Afirmó que, incluso, la representante de Oriental le indicó que se le concedería un periodo de gracia para realizar dichas gestiones y que no tendría que efectuar pagos durante ese tiempo, lo cual alegó constituye una falta clara a la buena práctica profesional.

Añadió que la representante del banco la persuadió constantemente a continuar con el proceso, pese a sus dudas, brindándole una orientación deficiente mediante actuaciones fraudulentas que viciaron su consentimiento y provocaron un cierre apresurado del negocio con la referida institución bancaria. Alegó que el 22 de julio de 2022 se llevó a cabo el cierre de la compraventa e hipoteca del inmueble, proceso que describió como atropellado, señalando que la representante del banco actuó con premura y la instó a firmar los documentos sin leerlos, bajo el pretexto de que debían estar listos antes de la llegada del notario autorizante.

Expuso que, una vez concluida la transacción, acudió a realizar el trámite para obtener el permiso de uso, conforme a la orientación recibida por la señora Díaz Toyos y la señora Pagán, pero su solicitud fue denegada por la agencia correspondiente, al determinarse que la propiedad se encontraba zonificada como urbana y que, por tanto, no era compatible con el uso comercial propuesto. Añadió que, al advertir las consecuencias de su deficiente orientación, la señora Díaz Toyos reconoció la negligencia de Oriental, indicando que le había consultado a la representante sobre el trámite de permisos de uso al inicio del caso, y que esta le manifestó que dichos permisos se solicitaban al final del proceso. Reconoció, además, que no contaba con experiencia en el ámbito de banca comercial y que, en su apreciación, el manejo del caso por parte de Oriental había sido negligente.

Indicó además que, el 5 de agosto de 2022, al presentar su reclamo ante la representante de Oriental, esta le refirió los contactos de las señoras Yahaira Rivera y Belia Morales, supuestamente gestoras recomendadas por el señor Vázquez Román, para que la orientaran sobre el asunto de la zonificación. Señaló que, ese mismo día, logró comunicarse con la señora Morales, quien le informó que no era posible obtener un permiso de uso comercial sin antes realizar el correspondiente cambio de zonificación y que el señor Vázquez Morales tenía conocimiento de ello, pues se le había informado previamente por vía telefónica.

En virtud de lo anterior, le solicitó al foro de instancia lo siguiente: (1) el pago de $500,000.00 por concepto de angustias mentales; (2) $150,000.00 por gastos y mejoras invertidos en la propiedad, así como por los costos de cierre del préstamo; y (3) $5,000.00 por los gastos incurridos en el litigio.

Superados múltiples trámites procesales impertinentes a la controversia de autos, el 3 de febrero de 2025, el señor Vázquez Román presentó una "**Moción de Sentencia Sumaria**", alegando que no existen controversias reales sobre hechos materiales que impidan la disposición sumaria del pleito. Especificó que la señora Tirado Miranda conocía desde el inicio la zonificación residencial de la propiedad. Argumentó que el

reclamo constituía un vicio redhibitorio prescrito y que las reclamaciones por enriquecimiento injusto y daños y perjuicios eran improcedentes. El 19 de marzo de 2025, la Recurrida presentó su correspondiente oposición. Posteriormente, la señora Díaz Toyos presentó también una "**Moción de Sentencia Sumaria**", sosteniendo que la señora Tirado Miranda no tenía una causa de acción válida ni prueba alguna que sustentara sus alegaciones de vicios del consentimiento u otros fundamentos de sus reclamos. Alegó, además, que no existían controversias de hechos esenciales que justificaran un juicio plenario y que, como cuestión de derecho, procedía resolver el caso a su favor.

Más adelante, el 2 de abril de 2025, los Peticionarios presentaron una "**Moción de Sentencia Sumaria Parcial**" en la que, al igual que el señor Vázquez Román y la señora Díaz Toyos, sostuvieron que en el presente caso no existe controversia genuina sobre hechos materiales que impida la disposición sumaria del caso. Alegaron que la Recurrida no puede demostrar que el señor Méndez Latalladi haya incurrido en negligencia en el ejercicio de su profesión, ni establecer un nexo causal entre las actuaciones de este y los daños que alega haber sufrido.

Argumentaron, además, que resulta igualmente evidente que la señora Tirado Miranda carece de prueba alguna que sustente la presunta intención del señor Méndez Latalladi de viciar su consentimiento previo a la suscripción de los contratos de compraventa e hipoteca, máxime cuando ni siquiera había examinado la tasación de manera adecuada. Sostuvieron que las reclamaciones presentadas en su contra son manifiestamente frívolas y que la persistencia de la Recurrida en continuar con el pleito constituye un ejercicio temerario del litigio.

En virtud de lo anterior, le peticionaron al Tribunal que dicte sentencia sumaria declarando "No Ha Lugar" la "**Demanda Contra Tercero**" instada en su contra. Además, solicitaron que se determine que la señora Tirado Miranda ha litigado temerariamente y que, en consecuencia, se le impongan los honorarios de abogado correspondientes.

El 30 de abril de 2025, la Recurrida presentó una "**Oposición a la Moción de Sentencia Sumaria**" radicada por los Peticionarios. Mediante dicho escrito reiteró los planteamientos expuestos en sus oposiciones anteriores y sostuvo que el tasador, el señor Méndez Latalladi, preparó una tasación para justificar la aprobación de un préstamo comercial sobre una propiedad que no cumplía con los requisitos para dicho uso. Alegó que el señor Méndez Latalladi no solo fue negligente, sino que incurrió en omisiones sustanciales que indujeron a error a Oriental y al resto de las partes involucradas, proveyéndoles una falsa justificación para continuar con una transacción improcedente.

Explicó que, independientemente de quién haya contratado al señor Méndez Latalladi como tasador, este tenía un deber profesional de objetividad y corrección técnica, el cual incumplió al emitir un informe basado en supuestos falsos. Indicó que un profesional con la experiencia que alega tener el señor Méndez Latalladi no podía incurrir en los errores que contiene el informe, a menos que fueran intencionales. Argumentó que la valoración realizada fue estrictamente comercial, ignorando las condiciones restrictivas de uso y edificación, así como la zonificación residencial de la propiedad, lo que constituye una falta grave a los estándares de su profesión.

Sostuvo que el tasador fundamentó su conclusión en una suposición extraordinaria de que el permiso de uso comercial sería eventualmente concedido, cuando en realidad se trataba de una condición hipotética, es decir, un escenario inexistente y contrario a la realidad jurídica del inmueble. Añadió que dicha irregularidad convierte el informe en uno inválido y carente de valor probatorio, pues parte de una premisa claramente falsa. Argumentó que este análisis ficticio fue utilizado por Oriental para justificar la concesión del préstamo comercial, lo que agrava la responsabilidad del tasador, quien debió advertir sobre la imposibilidad legal del uso propuesto.

Afirmó que el tasador incumplió con los estándares de la práctica profesional al omitir los criterios esenciales del análisis del mejor y más adecuado uso, en particular los de posibilidad física y permisibilidad legal,

centrando su evaluación únicamente en la rentabilidad económica. Señaló que, de haberse aplicado correctamente dichos criterios, el tasador habría concluido que el uso comercial era improcedente e incompatible con la realidad del inmueble.

Así las cosas, el 16 de mayo de 2025, Oriental y la señora Tirado Miranda presentaron una "**Solicitud Jurada de Sentencia por Consentimiento al amparo de la Regla 35.4 de Procedimiento Civil**". En dicho escrito informaron que, el 6 de mayo de 2025, suscribieron un Acuerdo Confidencial de Transacción y un Acuerdo de Indulgencia, ambos autorizados por el notario público Frank C. Torres Viada, bajo los afidávits números 205 y 206, respectivamente. Informaron que, mediante dichos acuerdos, Oriental concedió a la señora Tirado Miranda un plan de pagos estructurado para saldar el balance insoluto de principal adeudado, así como los intereses y cargos relacionados con el préstamo objeto del litigio. A tono con ello, le solicitaron al foro primario que emitiera la correspondiente sentencia por consentimiento, conforme a los términos estipulados en los acuerdos previamente mencionados.

Ese mismo día, la señora Tirado Miranda presentó una "**Solicitud de Desistimiento Voluntario con Perjuicio**", informando que las partes habían alcanzado acuerdos privados que disponían del caso de cobro de dinero y ejecución de hipoteca. En consecuencia, peticionó que se tuviera por desistida, con perjuicio, la "**Reconvención**" y se ordenara el archivo de la misma. En atención a ambas solicitudes, el Tribunal emitió una *Sentencia Parcial* en la que declaró "Ha Lugar" la "**Solicitud Jurada de Sentencia por Consentimiento**", aprobando el acuerdo y haciéndolo formar parte íntegra del referido dictamen. De igual modo, dictó una segunda *Sentencia Parcial* declarando "Ha Lugar" el "**Desistimiento Voluntario con Perjuicio**" presentado por la Recurrida, ordenando el cierre y archivo de las causas de acción instadas en contra de Oriental.

Posteriormente, el 19 de mayo de 2025, los Peticionarios presentaron una "**Réplica a la Oposición a Moción de Sentencia Sumaria Parcial**", en la cual reiteraron los argumentos sostenidos en su "**Moción de Sentencia**

**Sumaria Parcial**". Sostuvieron que la señora Tirado Miranda incumplió con las formalidades impuestas por la Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3, por lo que el Tribunal debía tener por admitidos los hechos materiales no controvertidos según presentados por los comparecientes. Alegaron, además, que la declaración jurada de la señora Tirado Miranda debía excluirse del récord judicial, por constituir un *sham affidavit* que contradice su testimonio previo, y que el ordenamiento no permite enmendar alegaciones mediante una oposición a sentencia sumaria. En virtud de ello, le solicitaron al foro de instancia que declarara "No Ha Lugar" la "**Demanda Contra Terceros**" presentada por la señora Tirado Miranda.

Ese mismo día, la señora Tirado Miranda presentó una nueva "**Solicitud de Desistimiento Voluntario con Perjuicio**", informando que había alcanzado acuerdos privados con Oriental que disponían de la "**Demanda**" y de la "**Demanda contra Tercero**" en cuanto a las empleadas de la institución, la señora Montalvo Santiago y la señora Pagán. En consecuencia, solicitó que se tuvieran por desistidas las causas de acción contra dichas partes y que se ordenara el archivo definitivo de las mismas. En atención a lo anterior, el Tribunal emitió otra *Sentencia Parcial* declarando "Ha Lugar" el desistimiento y ordenando el cierre y archivo de la causa respecto a las señoras Montalvo y Pagán.

Posteriormente, el 17 de junio de 2025, la señora Tirado Miranda presentó su "**Dúplica a la Réplica a la Oposición a Solicitud de Sentencia Sumaria**" mediante la cual reiteró sus planteamientos en oposición a la "**Moción de Sentencia Sumaria Parcial**" presentada por los Peticionarios y alegó que subsisten controversias genuinas de hechos medulares y asuntos de intención que impiden la disposición sumaria del caso. Finalmente, el 15 de septiembre de 2025, el TPI emitió una *Resolución* mediante la cual declaró "No Ha Lugar" las *Mociones de Sentencia Sumaria* presentadas por los Peticionarios, el señor Vázquez Román y la señora Díaz tras concluir que existen controversias de hechos medulares del pleito que

impiden su disposición sumaria. Específicamente, determinó que existe disputa respecto a los siguientes asuntos:

1) ¿Cuál fue el motivo por el que el señor Vázquez compró la propiedad objeto de controversia?

2) ¿Para qué tipo de uso el señor Vázquez tenía destinado dicho inmueble para la venta?

3) ¿Cuál fue la razón por la cual el señor Vázquez no quiso ser el corredor en la transacción objeto de la demanda contra terceros?

4) ¿Por qué el señor Vázquez contrató a la señora Díaz como corredora de ventas y la relación que en ese momento tenían ambos terceros demandados?

5) ¿Si tanto el señor Vázquez como la señora Díaz le hicieron falsas representaciones a la señora Tirado de que la propiedad podía ser vendida como comercial o con potencial de ser comercial y que la ayudarían con el proceso de cambio de zonificación?

6) ¿Cómo y cuál fue el método para realizar el informe de tasación?

7) La exactitud en cuanto a las conclusiones del informe de tasación.

8) Si el informe de tasación fue realizado y utilizado para defraudar y hacerle representaciones falsas a la señora Tirado.

9) Si los terceros demandados conocían que la zona donde ubicaba la propiedad objeto de controversia no podía ser cambiada a uso comercial.

10) El grado de conocimiento de la señora Tirado en cuanto a la zonificación de la propiedad objeto de litigio.

11) ¿Qué tipo de orientación e información recibió la señora Tirado en cuanto a la zonificación y los permisos de la propiedad, así como también el modo y el momento de hacer dicha gestión?

12) ¿Cuándo se llevó a cabo el cierre de la compra de la propiedad?

13) ¿Qué provocó el aumento a la aportación de los gastos de cierre, si dicho aumento fue conforme a las políticas bancarias pertinentes y cómo fue cubierta la misma?

14) ¿Qué le expresaron los funcionarios de la OGPe a la señora Tirado sobre el proceso de permisos y cambio de zonificación?

15) ¿Cuál fue la orientación que recibió la señora Tirado sobre la consulta de ubicación y las gestiones en cuanto a la misma?

16) Si las orientaciones presuntamente recibidas por la señora Tirado sobre los procesos de permisos, cambio de zonificación y consulta de ubicación fueron adecuadas.

17) ¿Cuáles fueron las gestiones de inteligencia que presuntamente hizo la señora Tirado entre agosto a octubre de 2022 y lo sucedido en cuanto a dichas gestiones?

18) ¿Si las actuaciones del señor Vázquez y la señora Díaz contravienen los deberes éticos de un corredor de bienes raíces?

19) Si los alegados gastos y arreglos invertidos en la propiedad realmente estaban relacionados con otras propiedades y si fueron costeados en su totalidad por otras personas.

20) Si la señora Tirado destruyó prueba sobre las inversiones en equipos y productos para su negocio.

21) Si el señor Vázquez vició la voluntad de la señora Tirado.

22) Si los terceros demandados se enriquecieron injustamente de la compraventa del inmueble.

23) Si la señora Díaz le expuso a la señora Tirado de que el proceso de cambio de zonificación, así como los permisos era uno sencillo y que todos los trámites pertinentes al mismo debían hacerse luego de que concluyera la transacción de compraventa y no antes del cierre.

24) ¿Cuáles fueron las razones por las que la señora Tirado presuntamente no abrió la cuenta en la página web ogpe.pr.gov/freedom?

25) ¿Cuáles fueron las razones por las cuales la señora Tirado aparentemente no fue a las oficinas de permiso antes de la firma del contrato de opción, así como de la compraventa, así como del cierre ni hizo gestiones sobre tales permisos o cambio de zonificación? ¿Si dicha acción de la señora Tirado tuvo que ver con las alegadas falsas representaciones de la señora Díaz?

26) ¿Cuáles fueron las razones por las cuales la señora Tirado aparentemente no se comunicó con el tasador en relación al informe de tasación y si se comunicó con otra entidad o persona para comprender el mencionado informe?

27) Si los terceros demandados en sus actuaciones engañaron e indujeron a error a la señora Tirado en cuanto a los trámites de la propiedad objeto de litigio.

28) ¿Cuáles fueron las razones por las cuales la señora Tirado aparentemente no solicitó la rezonificación ni la variación de uso de la propiedad y si la habían orientado adecuadamente para que lo hiciera?

29) Si la señora Díaz brindó una orientación adecuada a la señora Tirado y no le ocultó información relevante en torno a la propiedad objeto de la reclamación.

30) Si las actuaciones de la señora Díaz viciaron el consentimiento de la señora Tirado.

31) Si el informe de tasación se hizo conforme a los estándares requeridos en la práctica de la profesión.

32) Si el informe de tasación tomó en cuenta que la propiedad tenía restricciones de uso y edificación.

33) Si JMA al realizar su informe de tasación conocía que el uso comercial no era permitido ni tampoco potencial.

34) ¿Qué gestiones realizó la señora Tirado ante la inquietud que la causaba el hecho de que zonificación de la propiedad era residencial y que esto le creara problemas con la solicitud de los permisos?

35) Si la señora Tirado consultó con alguna persona sobre las comunicaciones que sostuvo con el Municipio relacionadas al permiso único y de las alternativas para obtener un permiso de forma no ministerial.

36) ¿Qué fue lo que le informó el Municipio de Bayamón en cuanto a la subsanación de la solicitud de permiso único de la señora Tirado y en qué consistía la misma?

37) ¿Cuáles fueron las razones por las cuales la señora Tirado presuntamente no solicitó la consulta de ubicación conforme a la Resolución emitida por el Municipio y si recibió la orientación adecuada sobre ese particular?

38) Si la tasación era confusa y si JMA estaba obligado establecer en su informe si se requería un cambio de zonificación.

39) Si la señora Tirado discutió con alguien los pormenores de la tasación de JMA.

40) Si JMA tenía la obligación de hacer un informe de tasación que la señora Tirado pudiese entender cuando el informe de tasación fue realizado por el Banco.

41) Si JMA actuó intencionalmente en conjunto con el vendedor de la propiedad al hacer el informe de tasación y si con ello se vició el consentimiento de la señora Tirado.

42) Si existía algún tipo de relación entre JMA, el señor Vázquez y la señora Díaz.

43) Si el informe de tasación realizado por JMA era un elemento indispensable para que la señora Tirado otorgara los contratos objeto de la reclamación relacionados a la demanda.

44) La negligencia y responsabilidad de las partes, si alguna.

45) Los daños, si alguno.

Inconforme con lo anteriormente resuelto, los Peticionarios acudieron ante nos mediante el recurso de epígrafe, en el que señalaron la comisión de los siguientes errores:

**ERROR 1: El TPI erró al no adoptar hechos incontrovertidos debidamente sustentados por evidencia admisible los cuales no fueron refutados por la peticionaria con prueba admisible y requiriéndole un estándar de prueba contundente y convincente.**

**ERROR 2: El TPI erró al no disponer de la reclamación extracontractual ante la inexistencia de alegaciones y/o evidencia en torno al nexo causal entre las actuaciones de**

**JMA y los daños alegadamente sufridos por la peticionada.**

**ERROR 3: El TPI erró al hacer una determinación de hechos que no está apoyada por la prueba.**

**ERROR 4: El TPI erró al determinar que existían hechos en controversia que impedían la disposición sumaria en contra de los peticionarios ya que los referidos hechos no son materiales.**

**ERROR 5: El TPI erró al no desestimar la acción de dolo de tercero cuando la peticionada no presentó prueba alguna de los elementos de la causa de acción.**

**ERROR 6: El TPI erró al no desestimar la causa de acción de enriquecimiento injusto aun cuando existen otros remedios estatutarios.**

El 20 de octubre de 2025, emitimos *Resolución* mediante la cual le concedimos un término a la señora Tirado para que presentara su alegato en oposición al recurso. Ha transcurrido en exceso del plazo concedido a la Recurrida, sin que esta última solicitara prórroga o cumpliera con nuestra orden.

En vista de lo anterior, procedemos a adjudicar los méritos del caso sin el beneficio de su comparecencia.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista Valentín v. Sucn. Batista Valentín, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi et al., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en

controversia los hechos presentados por el promovente. <u>Oriental Bank v. Caballero García</u>, *supra*, pág. 8; <u>Roldán Flores v. M. Cuebas *et al.*</u>, 199 DPR 664, 677 (2018).

Adicionalmente, en <u>León Torres v. Rivera Lebrón</u>, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". <u>Íd</u>., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. <u>Abrams Rivera v. ELA, DTOP y otros</u>, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. <u>JADM v. Centro Comercial Plaza Carolina</u>, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". <u>ELA v. Cole</u>, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. <u>Rivera Matos *et al.* v.</u>

Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice

la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Batista Valentín v. Sucn. José E. Batista Valentín y otros, 216 DPR ___ (2025); 2025 TSPR 93. A base de éste, las partes contratantes pueden establecer las condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 6242. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante debe actuar de buena fe en el cumplimiento de su obligación. 31 LPRA sec. 9754; 31 LPRA sec. 8983. Es por ello que existe un contrato desde que dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. 31 LPRA sec. 9751.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (1) consentimiento de los contratantes; (2) objeto determinable y (3) causa lícita. 31 LPRA 6131; 31 LPRA sec. 6142; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "cuando la ley no designa una forma para la realización de un negocio jurídico, se puede utilizar aquella que se considere conveniente". 31 LPRA sec. 6161.

Ahora bien, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver el contrato por falta de cumplimiento con una obligación principal. 31 LPRA sec. 9823. Esto es, el perjudicado puede reclamar el cumplimiento del contrato o la resolución de

la obligación con el resarcimiento de los daños causados. Íd. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995). Así, nuestro más Alto Foro ha expresado que:

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

Por su parte, un contrato se considera celebrado por adhesión cuando el aceptante se ve obligado a aceptar los términos previamente establecidos. 31 LPRA sec. 9802. Las disposiciones de este tipo de contrato deben también ser interpretadas en sentido desfavorable a la persona que las redactó y en favor de la persona que se vio precisada a aceptar su contenido. Íd. Así pues, son especialmente anulables en los contratos celebrados por adhesión las cláusulas que no se redactan de manera clara, completa y fácilmente legible y aquellas que limitan al adherente la interposición de acciones. 31 LPRA sec. 9803.

Ahora bien, los tribunales tenemos la ineludible labor de velar por el cumplimiento específico de toda obligación contractual, sin relevar a las partes contratantes del cumplimiento de ésta. Siempre velando porque el contrato esté enmarcado en el ámbito de lo legítimo y no adolezca de vicio alguno. Cervecería Corona v. Commonwealth Ins. Co., 115 DPR 345, 351 (1984); Olazábal v. U.S. Fidelity,etc. 103 DPR 448, 462 (1975).

**C.**

El enriquecimiento injusto es un principio general de derecho que parte de la premisa de que todo desplazamiento patrimonial debe tener una explicación razonable en el ordenamiento vigente. S.L.G. Sánchez v. S.L.G. Valentín, 186 DPR 503, 516 (2012). Se trata pues, de una doctrina que es aplicable únicamente cuando no hacerlo perpetraría la desigualdad de que

alguien se enriquezca injustamente en perjuicio de otra persona. Íd., pág. 515. El concepto de "causa" se refiere al acto jurídico que explica o fundamenta la obtención de un valor. Íd., pág. 516. De esta manera, el enriquecimiento no es considerado injusto si está respaldado por una prestación contractual, título oneroso o gratuito, o que si ha sido obtenido como cumplimiento de una obligación legal o natural. Ortiz Andújar v. E.L.A., 122 DPR 817, 829 (1988) (citando a G. Velázquez, El enriquecimiento injusto en el Derecho puertorriqueño, 5 Rev. Der. Leg. Jur. C. Abo. P.R. 176, 177-178 (1940)).

Por su parte, el Artículo 1526 del Código Civil dispone que el enriquecimiento sin justa causa ocurre cuando una persona se enriquece a expensas de otra, por lo que está obligada a indemnizarla de la correlativa disminución patrimonial en la medida de su propio enriquecimiento, ya sea que este provenga de la obtención de una ventaja o de la evitación de un perjuicio. 31 LPRA sec. 10771. A tenor con lo anterior, esta norma se configura cuando concurren los siguientes requisitos: (1) la existencia de un enriquecimiento; (2) existencia de un empobrecimiento; (3) una relación entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique dicho enriquecimiento; y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento injustificado. PRHOA v. Confederación Hípica, 202 DPR 509, 524 (2019); Mun. de Quebradillas v. Corp. Salud Lares, 180 DPR 1003, 1019-1020 (2011). Ahora bien, la acción de restitución no procede: "(a) si la ley deniega la acción; (b) si la ley atribuye otros efectos al enriquecimiento; (c) si la ley permite al empobrecido ejercer otra acción; o (d) si entre las partes o interesados existe una relación contractual". 31 LPRA sec. 10772.

La antedicha doctrina se puede dar en dos modalidades, a saber: (1) el positivo o aumento patrimonial y (2) el negativo o disminución patrimonial. E.L.A. v. Cole, 164 DPR 608, 634 (2005). La última de estas vertientes se refiere a que un "no gasto equivale a un ingreso". Mun. de Quebradillas v. Corp. Salud Lares, supra, pág. 1020. Esto es, una persona le evita un gasto cuando asume una pérdida que ordinariamente le correspondería a la otra

persona. Íd. Finalmente, el enriquecimiento injusto no es invocable cuando su efecto sea contrario a una clara política pública, plasmada en un estatuto o en la Constitución. Hatton v. Mun. de Ponce, 134 DPR 1001, 1010 (1994).

Afín a lo expresado previamente, nuestro máximo foro judicial ha sostenido que las partes que contratan con cualquier entidad de gobierno "sin cumplir con los requisitos de contratación gubernamental se arriesgan a asumir la responsabilidad de sus pérdidas". Rodríguez Ramos *et al.* v. ELA *et al.*, 190 DPR 448, 461 (2014). Es decir, se ha rechazado la aplicación de la figura de enriquecimiento injusto para convalidar la obligación pública sin contrato escrito y así indemnizar los daños sufridos por una parte privada al incumplir con estos. Íd.

**D.**

El dolo es un vicio de la voluntad que implica "un complejo de malas artes, contrario a las leyes de la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio". S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 64 (2011); 31 LPRA sec. 6191. Este puede surgir al momento de la contratación o posteriormente, en la consumación del contrato. Pérez Rosa v. Morales Rosado, 172 DPR 216, 229 (2007). En ese sentido, el callar sobre una circunstancia importante pertinente al objeto del contrato constituye dolo. García Reyes v. Cruz Auto Corp., 173 DPR 870, 886 (2008). Es decir, que el dolo no necesariamente implica una artimaña, sino que el silencio sobre determinados hechos relevantes para viabilizar la contratación, también se cataloga como tal. Bosques v. Echevarría, 162 DPR 830, 836 (2004).

Existen dos tipos de dolo: el grave y el incidental. 31 LPRA secs. 6211 y 6213. El dolo incidental es el que afecta las obligaciones accesorias del contrato y únicamente da lugar a una indemnización en daños y perjuicios. Colón v. Promo Motors Imports, Inc., 144 DPR 659, 667 (1997); 31 LPRA sec. 6213. Ello responde a que no tuvo una influencia decisiva sobre la obligación, dado a que, aunque hubo engaño en el modo en que el contrato fue celebrado, el perjudicado sí tenía la voluntad de contratar. Pérez Rosa v. Morales Rosado, *supra*, pág. 230; García Reyes v. Cruz Auto Corp.,

*supra*, pág. 887. En otras palabras, que el contrato se hubiera celebrado de todas formas, pero bajo condiciones diferentes. Colón v. Promo Motors Imports, Inc.*, supra*, pág. 667.

De otro lado, el dolo grave se define como "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado". 31 LPRA sec. 6211. Véase, S.L.G. Ortiz-Alvarado v. Great American, *supra*, pág. 64. Esto es, cuando el engaño recae en los elementos esenciales del contrato; es decir, que tiene un efecto en las motivaciones principales que llevaron a la parte afectada a vincularse. Colón v. Promo Motors, Inc.*, supra*, pág. 669. De manera que, si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra. 31 LPRA sec. 6211. No obstante, el dolo recíproco no invalida el negocio jurídico ni obliga a resarcir. 31 LPRA 6213.

Cabe destacar que el dolo no se presume, sino que tiene que demostrarse, ya sea de forma indirecta o mediante evidencia circunstancial. García Reyes v. Cruz Auto Corp.*, supra*, págs. 887-888. En consecuencia, la determinación de si el dolo es grave o incidental es una cuestión de hecho. Por lo tanto, está sujeta a la apreciación de las circunstancias concurrentes en cada caso. Acosta & Rodas, Inc., v. PRAICO*,* 112 DPR 583, 616 (1982). Al determinar si existe dolo que anule el consentimiento, entre otros aspectos, se deben considerar: (1) la preparación académica del perjudicado; (2) su condición social y económica; (3) y las relaciones y tipo de negocios en que se ocupa. García Reyes v. Cruz Auto Corp.*, supra*, pág. 887; Citibank v. Dependable Ins. Co., Inc., 121 DPR 503, 519 (1988). Así pues, el dolo puede surgir de un simple hecho o del conjunto de éstos y la evolución de las circunstancias y manejos engañosos. Acosta & Rodas, Inc. v. PRAICO, *supra*, pág. 616. Nuestro máximo foro ha expresado que:

> [Es posible] que lo que aparenta ser incidental desde la perspectiva general del contrato en cuestión, sea en realidad esencial para los contratantes, por lo que el engaño o incumplimiento con alguno de los elementos de la contratación, puede dar lugar a la variante del dolo causante

[grave]. <u>Colón v. Promo Motors, Inc.</u>, *supra*, pág. 669. (Corchetes suplidos).

**III.**

En el presente caso, los Peticionarios nos solicitaron la revocación de la *Resolución* del TPI en la que se declaró "No Ha Lugar" su "**Solicitud de Sentencia Sumaria Parcial**".

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, los Peticionarios sostienen que el TPI erró al: (1) no adoptar hechos incontrovertidos debidamente sustentados por evidencia admisible, los cuales no fueron refutados por la señora Tirado Miranda con prueba admisible; (2) no disponer de la reclamación extracontractual ante la existencia de alegaciones y/o evidencia en torno al nexo causal entre las actuaciones del señor Méndez y los daños alegadamente sufridos; (3) hacer determinaciones de hechos que no se sustentan en la prueba; (4) determinar que existían hechos en controversia que impedían la disposición sumaria; (5) no desestimar la acción de dolo y (6) no desestimar la causa de acción de enriquecimiento injusto. Veamos.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. En diciembre de 2021, la señora Tirado Miranda observó que cierta propiedad en la Avenida Laurel G-1 de la Urbanización Santa Juanita estaba a la venta y le interesó por estar ubicada en una esquina de una avenida al lado de un Walgreens.

2. La señora Tirado Miranda se comunicó con la señora Díaz Toyos para ver la Propiedad y la visitó.

3. Desde que fue a ver la Propiedad por primera vez, la señora Díaz Toyos le indicó que la Propiedad estaba clasificada como Residencial Urbana.

4. Desde al menos el 23 de diciembre de 2021, la señora Tirado Miranda sabía que la propiedad tenía una zonificación residencial.

5. El 4 de enero de 2022, con conocimiento de que la propiedad estaba zonificada como residencial y de que tendría que obtener un permiso de uso comercial del Municipio de Bayamón para operar su negocio, la señora Tirado Miranda firmó el contrato de opción de compraventa de la Propiedad.

6. La señora Tirado Miranda solicitó un préstamo comercial en Oriental.

7. El 2 de mayo de 2022, Oriental contrató los servicios del señor Méndez Latalladi.

8. El señor Méndez Latalladi es un Evaluador Profesional Autorizado por la Junta Examinadora de Evaluadores Profesionales de Bienes Raíces y Evaluador Profesional con las licencias # 788EPA y #216CG.

9. El señor Méndez Latalladi también forma parte del listado de los evaluadores aprobados para llevar a cabo tasaciones de propiedades a ser garantizadas por préstamos FHA y es un tasador autorizado por el Mortgage Appraissal Guidance and Information Compliance System también conocido como MAGIC.

10. Según surge de la Carta Acuerdo entre Oriental y el señor Méndez Latalladi, Oriental es el cliente del señor Méndez Latalladi.

11. La tasación sería revisada por Oriental como parte de los procesos de evaluación de calidad de la valoración de colateral del Banco.

12. Conforme a la Carta Acuerdo con Oriental, el señor Méndez Latalladi emitiría su opinión en cuanto al valor en el mercado de la Propiedad.

13. La tasación solicitada por Oriental era para propósitos de un préstamo comercial en el cual se le requirió revelar cualquier condición extraordinaria o hipotética.

14. El 1 de junio de 2022 el Sr. Méndez emitió su opinión sobre el valor en el mercado de la Propiedad y lo notificó a Oriental Bank junto al informe de tasación.

15. El informe de tasación se hizo exclusivamente para el uso de Oriental.

16. La tasación específicamente dispone que la misma no puede ser utilizada por personas que no sea el Oriental y solamente se puede utilizar para el propósito para el cual fue preparado, que en este caso es para valorar la propiedad al precio del mercado.

17. El Sr. Méndez concluyó que el mejor uso y el mayor valor de la Propiedad era la utilización para propósitos comerciales. Llegó a esta conclusión tomando en consideración lo

siguiente: (a) que sería utilizada en el futuro para propósitos comerciales; (2) que la Propiedad está ubicada en una avenida de alto tráfico donde se genera mucho ruido; y (3) el uso de propiedades colindantes zonificadas residenciales con permiso y uso comercial.

18. La valorización de la Propiedad según hecha en la tasación partió de la premisa extraordinaria de que se obtuviera el permiso de uso comercial para la propiedad, ya que la misma estaba calificada como Residencial Urbana. En la tasación, el Sr. Méndez explicó que conforme a los estándares de USPAP si no se obtenía el permiso de uso comercial, la tasación era inválida.

19. El señor Méndez Latalladi especificó que la propiedad estaba en un distrito zonificado Residencial Urbano, por lo que los usos permitidos eran residenciales, estacionamientos, hospedajes especializados y algunos usos institucionales.

20. La tasación fue enviada a Oriental y utilizada por el Banco para aprobar el préstamo. De hecho, la tasación específicamente dispone que la misma no puede ser utilizada por personas que no sea el Oriental y solamente se puede utilizar para el propósito para el cual fue preparado, que en este caso es para valorar la propiedad al precio del mercado.

21. La valorización de la Propiedad según hecha en la tasación partió de la premisa extraordinaria de que se obtuviera el permiso de uso comercial para la propiedad ya que la misma estaba calificada como Residencial Urbana.

22. Para valorizar la propiedad, JMA utilizó ventas de propiedades comparables recientes incluyendo una propiedad ubicada en un área residencial intermedia (R-I) con uso comercial, otra propiedad residencial comercial (R-C) con uso comercial y una en área zonificada comercial intenso (C-I).

23. La señora Tirado Miranda nunca ha tenido contacto con José Méndez Latalladi ni su esposa Maruxa Dumont. Según la señora Tirado, el único contacto que ha tenido fue con una persona que hace trabajos para José Méndez & Asociados que visitó la Propiedad, y con quien no discutió asunto alguno relacionado a la zonificación de la Propiedad y/o la obtención del permiso comercial.

24. Según la señora Tirado los hechos constitutivos de las causas de acción en contra de JMA, el señor Méndez, su esposa y la Sociedad Legal de Bienes Gananciales surgen exclusivamente del informe de tasación.

25. La señora Tirado Miranda admitió que miró por encima el informe de tasación suscrito por JMA y el señor Méndez.

26. La señora Tirado Miranda reconoció que no discutió con nadie la tasación con el fin de entenderla.

27. La señora Tirado Miranda admitió que no se comunicó con el tasador para preguntarle cómo interpretar la tasación.

28. La señora Tirado Miranda admitió que, en efecto, entendió que el informe de tasación exponía que el uso de la propiedad era residencial urbano y que el uso futuro esperado era uso comercial.

29. La señora Tirado Miranda también entendió que en la tasación decía que la propiedad fue desarrollada para uso residencial hacía 40 años y que el uso futuro esperado era uno comercial.

30. La señora Tirado Miranda admitió que entendió que la tasación fue hecha bajo el supuesto extraordinario de que le dieran permiso de uso comercial, el cual la propiedad no tenía y que de no obtener el permiso la tasación era nula.

31. La señora Tirado Miranda reconoció que el tasador no tenía obligación alguna de explicarle la tasación.

32. Según la señora Tirado Miranda, su reclamación en contra de los terceros demandados procede porque el Municipio de Bayamón le requirió un cambio de zonificación para poder operar su negocio en la Propiedad.

33. La señora Tirado Miranda reconoció que no sabía si era requerido que el tasador hiciera una nota sobre la necesidad del alegado cambio de zonificación.

34. Los criterios de físicamente posible y legalmente permisible si fueron analizados en la tasación. En cuanto al criterio de legalmente permisible, la tasación específicamente dispone que la Propiedad está ubicada en una zona de zonificación (R-U) y detalla los usos permitidos para esta zonificación. Expone además que cualquier otro uso comercial requiere permisos de uso para operar. Basándose en el hecho de existen muchas propiedades frente a la Avenida Laurel que están en zonas residenciales y que se utilizan con fines comerciales, operando con permisos de uso aprobado, el uso comercial es legalmente posible.

35. La señora Tirado Miranda explicó que quien le había representado que el asunto de la zonificación no representaba un problema para poder operar su negocio en la Propiedad fue la Sra. Paula Guadalupe, empleada de Oriental, y no JMA.

36. La señora Tirado Miranda también admitió que de la tasación no se desprende que obtener el permiso de uso fuera un trámite sencillo y/o que se iba a poder sacar el permiso de uso.

37. La señora Tirado Miranda alegó además en la Demanda Contra Tercero que JMA actuó en común acuerdo con los otros terceros demandados viciando su voluntad y para enriquecerse injustamente.

38. La señora Tirado Miranda explicó que la conducta de JMA constitutiva del alegado común acuerdo con los otros terceros demandados increíblemente consistió de ser contratado por Oriental para realizar la tasación.

39. No existe relación contractual alguna entre la señora Tirado Miranda y el señor Méndez Latalladi.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, los Peticionarios alegan que la señora Miranda Tirado no ha establecido el nexo causal entre la tasación y los alegados daños sufridos. Igualmente, sostienen que la tasación se

realizó únicamente para establecer el valor en el mercado de la propiedad que Oriental obtendría en garantía del préstamo hipotecario y no para determinar si el permiso de uso era viable. Además, argumentan que la Recurrida no ha producido evidencia alguna de ninguno de los requisitos de la causa de acción instada en su contra por dolo e enriquecimiento injusto.

Conforme adelantáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a algún hecho esencial y pertinente del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Demanda Contra Tercero**", la "**Solicitud de Sentencia Sumaria Parcial"**, su correspondiente *Oposición,* y los documentos anejados a dichas mociones, hemos arribado a la conclusión de que el TPI erró al no disponer del caso por la vía sumaria. Nos explicamos.

De entrada, es menester destacar que en la "**Demanda Contra Tercero**" la Recurrida le imputó al señor Méndez Latalladi, tasador de la propiedad objeto de la presente controversia, haber viciado su voluntad y consentimiento al contratar con Oriental, así como haberle ocasionado daños y perjuicios y de haberse enriquecimiento injustamente. No obstante lo anterior, del examen minucioso de las alegaciones presentadas por la señora Tirado Miranda en contra de los Peticionarios, se desprende con meridiana claridad que las causas de acción invocadas por la Recurrida tienen su origen exclusivo en la relación contractual que esta sostuvo con

Oriental, sin que medie vínculo jurídico alguno con el señor Méndez Latalladi o JMA.

De hecho, la intervención del señor Méndez Latalladi se limitó estrictamente a la ejecución de un servicio profesional encomendado por Oriental, consistente en la tasación de la propiedad objeto del préstamo hipotecario. Además, la referida tasación devela, de manera inequívoca, que la valoración se efectuó bajo un supuesto extraordinario de que se otorgara el permiso de uso para la operación comercial propuesta advirtiendo expresamente que, de no materializarse dicho supuesto, la conclusión sobre el valor informado sería nula. Tal advertencia constituye una manifestación clara del cumplimiento de su obligación de transparencia, al definir con exactitud el alcance y los límites de su intervención profesional.

Por otra parte, aun si le concediéramos valor hipotético a la alegación de la señora Tirado Miranda de que su consentimiento se vio viciado por error o falsa representación, dicho vicio, de existir, únicamente podría imputársele a Oriental, y no a un tercero ajeno sobre quien no existe alegación alguna que intervino en el proceso de contratación habido entre la Recurrida y el banco, y a quien se le reclama por lo que surge exclusivamente del informe de tasación. En nuestro ordenamiento jurídico la doctrina del vicio de la voluntad o del consentimiento presupone la existencia de un vínculo contractual entre las partes afectadas; por lo tanto, su configuración resulta jurídicamente improcedente frente a quien no formó parte del negocio jurídico ni intervino en su celebración.

Más aun cuando los Peticionarios presentaron documentación que estableció que la señora Tirado Miranda (1) admitió que miró por encima el informe de tasación suscrito por JMA y el señor Méndez; (2) reconoció que no discutió con nadie la tasación con el fin de entenderla; (3) admitió que no se comunicó con el tasador para preguntarle cómo interpretar la tasación; (4) tenía pleno conocimiento de que el informe de tasación exponía que el uso de la propiedad era residencial urbano y que el uso futuro esperado era uso comercial; (5) entendió que en la tasación decía que la propiedad fue desarrollada para uso residencial hacía 40 años y que el uso futuro

esperado era uno comercial; (6) admitió que entendió que la tasación fue hecha bajo el supuesto extraordinario de que le dieran permiso de uso comercial, el cual la propiedad no tenía y que de no obtener el permiso la tasación era nula; y (7) reconoció que el tasador no tenía obligación alguna de explicarle la tasación.

Abónese a lo anterior, el hecho incontrovertido de que la señora Tirado Miranda sostuvo que su reclamación en contra de los terceros demandados procedía porque el Municipio de Bayamón le requirió un cambio de zonificación para poder operar su negocio en la Propiedad y, sin embargo, reconoció que no sabía si era requerido que el tasador hiciera una nota sobre la necesidad del alegado cambio de zonificación. **Por si fuera poco, la Recurrida expresó, bajo juramento, que quien le había representado que el asunto de la zonificación no representaba un problema para poder operar su negocio en la Propiedad fue la Sra. Paula Guadalupe, empleada de Oriental, y no JMA o el señor Méndez. De hecho, la señora Tirado Miranda admitió que de la tasación no se desprende que obtener el permiso de uso fuera un trámite sencillo y/o que se iba a poder sacar el permiso de uso**.

Ahora bien, aun si hiciéramos abstracción de lo anterior, quien único podría reclamar por deficiencias en la tasación preparada por JMA sería Oriental, como parte contratante con el tasador. La señora Tirado Miranda, en tanto tercero ajeno a la relación contractual entre Oriental y el señor Méndez Latalladi y/o JMA, carecía de causa de acción para reclamar responsabilidad alguna derivada de la presunta transgresión de dicho contrato. En consecuencia, cualquier incumplimiento atribuible a los Peticionarios habría sido, en su caso, de naturaleza contractual y únicamente exigible por Oriental, quien era la parte legitimada para incoar la acción correspondiente, de haber existido fundamento para ello.

En lo que respecta a la reclamación de enriquecimiento sin justa causa, la señora Tirado Miranda explicó que la conducta de JMA constitutiva del alegado común acuerdo con los otros terceros demandados consistió de **ser contratado por Oriental para realizar la tasación**. A pesar de ello, no

produjo ni rebatió con documentación la extensión de dicha reclamación y cómo se configuró; simplemente se limitó a expresar que la misma procedía por el vínculo contractual habido entre JMA y/o el señor Méndez y Oriental.

En suma, al no mediar entre la Recurrida y el señor Méndez Latalladi relación contractual alguna, ni alegarse que este haya intervenido directa o sustancialmente en el perfeccionamiento del contrato de préstamo hipotecario objeto de esta controversia, ni tampoco evidenciar cómo la tasación contribuyó al presunto dolo en la contratación, las reclamaciones por vicio del consentimiento, daños y perjuicios y enriquecimiento injusto resultan jurídicamente improcedentes. Resolver lo contrario implicaría extender indebidamente la responsabilidad contractual a terceros ajenos al vínculo jurídico habido entre Oriental y el señor Méndez Latalladi, en clara contravención con nuestro ordenamiento jurídico. Según hemos esbozados en los párrafos precedentes, la evidencia que obra en los autos demuestra que ninguna de las causas de acción incoadas por la Recurrida se sostiene.

Por consiguiente, al no existir controversia real sobre hechos materiales y pertinentes que justifiquen la continuación del presente pleito en contra de los Peticionarios, procede disponer del caso por la vía sumaria y desestimar, con perjuicio, todas las reclamaciones instadas en contra de éstos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el auto de *certiorari* ante nuestra consideración, *revocamos* la *Resolución* recurrida y *desestimamos*, con perjuicio, las causas de acción instadas en contra de los Peticionarios.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones